# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVEN R. DeGRAVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 8147 |
| v. ) | |
| ) | Judge John W. Darrah |
| NATIONAL AUTOMATIC MERCHANDISING ) | |
| ASSOCIATION PENSION PLAN and ) | |
| NATIONAL AUTOMATIC MERCHANDISING ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Steven DeGrave, filed suit against Defendants, the National Automatic Merchandising Association Pension Plan ("the Plan") and the National Automatic Merchandising Association ("NAMA"), alleging violation of Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140. Presently pending before the Court is the Plan's Motion to Dismiss.

### BACKGROUND

A reading of DeGrave's Complaint supports the following summary of the alleged conduct of the parties.

DeGrave was hired by NAMA on April 3, 2000, as the Vice President of Sales and Service. The Plan provides defined benefit pension payments and benefits to eligible NAMA employees. DeGrave qualified and received coverage under the Plan.

During the fourth quarter of 2003, NAMA's senior management received an actuarial report from the Plan's retained actuaries, Deloitte Consulting, LLP, reporting the Plan's actuarial valuation

as of January 1, 2004. The report indicated that NAMA's minimum required contribution to the Plan for the 2003 plan year was $377,618 (the "2003 Underfunding"). The minimum required contribution to the Plan for the 2004 plan year was $311,515 (the "2004 Underfunding"). The NAMA Board of Directors authorized NAMA to meet the 2003 Underfunding by taking the required funds from NAMA's cash reserves that stood at approximately $5,265,776 as of December 31, 2003.

As of January 2004, NAMA incurred an actual operating loss in 2003 of approximately $147,352. At this same time, NAMA was projecting an anticipated net operating surplus in 2004 of $140,000. However, after meeting a projected pension plan expense for 2004 of $439,000, NAMA's total net revenue for 2004 was expected to actually be a loss of $298,900.

In early 2004, NAMA's senior management undertook a course of action to meet the 2004 Underfunding by decreasing operating expenses, including a freeze on all 2004 salary levels, travel budget reductions, and member benefit reductions. On January 16, 2004, Richard Geerdes, NAMA's President and Chief Executive Officer, convened an all-staff meeting of NAMA employees and expressed that NAMA had to reduce operating expenses in 2004, primarily due to the 2004 Underfunding of the pension plan. Geerdes invited any and all employees to consider a voluntary reduction from a 5-day to a 4-day workweek with a commensurate 20 percent pay reduction.

At a February 2004 board meeting, Geerdes provided the board a Pension Plan Update, indicating that senior management, pension plan advisors, and the Retirement Committee had undertaken a review of the Plan in an attempt to make the program more affordable.

On February 23, 2004, Dan Mathews, NAMA's Senior Vice President and Chief Operating Officer and DeGrave's supervisor, met with DeGrave to discuss whether DeGrave was interested in accepting the 4-day workweek with a 20 percent pay reduction. DeGrave indicated that he would

accept a 5 percent pay reduction if other members of senior management would do likewise. During their conversation, Mathews asked DeGrave whether the pension benefit provided under the Plan was an important and valuable employee benefit to DeGrave. DeGrave indicated that the pension plan was very valuable to him. The next day, Mathews again spoke with DeGrave, indicating that Geerdes is "determined to fix the pension issue" and that DeGrave's position at NAMA was "in play" in NAMA's efforts to meet the 2004 Underfunding. On February 26, 2004, DeGrave informed Mathews and Geerdes, via an email, of his willingness to take a 5 percent pay reduction in 2004 if other senior managers did the same.

On March 3, 2004, Mathews informed DeGrave that DeGrave's employment at NAMA had been involuntarily terminated effective March 5, 2004. NAMA's termination of DeGrave's employment prevented DeGrave from ultimately acquiring a vested right to his pension under the Plan that would have been fully vested on April 3, 2005, under the terms of the Plan.

## ANALYSIS

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint that would make out a claim."

3

*Graehling v. Village of Lombard, Ill*, 58 F.3d 295, 297 (7th Cir. 1995). The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz*, 534 U.S. at 513.

The Plan argues that it should be dismissed from the suit because an employee benefit plan is not the proper defendant in an ERISA action brought under Section 510 alleging improper interference with the attainment of employee benefits through the termination of employment.

Section 510 of ERISA provides that it is unlawful for any "person" to discharge, fire, suspend, expel, discipline or discriminate against a participant or beneficiary: (1) for exercising any right to which he is entitled under the provisions of an employee benefit plan, ERISA, or the Welfare and Pension Plans Disclosure Act or (2) for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, ERISA or the Welfare and Pension Plans Disclosure Act. 29 U.S.C. § 1140. The term "person" is defined as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

Section 510 "was designed to protect the employment relationship against actions designed to interfere with, or discriminate against, the attainment of a pension right." *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990) (*Deeming*). "[A] fundamental prerequisite to a § 510 action is an allegation that the employer-employee relationship, and not merely the pension plan, was changed in some discriminatory way." *Deeming*, 905 F.2d at 1127. Accordingly, a pension plan not involved in the changed employer-employee relationship is not a proper defendant under Section 510. *See Deeming*, 905 F.2d at 1127; *see also Chailland v. Brown & Root, Inc.*, 45 F.3d 947, 950-51 (5th Cir. 1995); *Burditt v. Kerr-McGee Chemical Corp.*, 982 F. Supp. 404, 408

(N.D. Miss. 1997); *Swanson v. U.A. Local 13 Pension Plan*, 779 F. Supp. 690, 702 (W.D.N.Y. 1991); *Rollo v. Maxicare of Louisiana, Inc.*, 698 F. Supp. 111, 114 (E.D. La. 1988); *Adams v. Koppers Co.*, 684 F. Supp. 399, 401 (W.D. Pa. 1988); *Borntrager v. Central States, Southeast & Southwest Areas Pension Fund*, 2003 WL 22251407 at *6 (N.D. Iowa July, 2, 2003); *Young v. AT&T Transition Protection Payment Plan*, 1989 WL 675 at *2 (D.N.J. Jan 6, 1989) (collectively holding that a pension plan is not the proper defendant in a Section 510 claim).

Based on the above, the Plan is not a proper party in Plaintiff's Section 510 claim. Plaintiff's arguments that the Plan should remain a party to the suit because the Plan will be involved in calculating Plaintiff's pension benefits if Plaintiff prevails and because Plaintiff was required to exhaust his administrative remedies are meritless. There is no allegation, nor does Plaintiff argue, that the Plan was involved in the change of Plaintiff's and NAMA's employer-employee relationship that interfered with, or discriminated against, the attainment of Plaintiff's pension rights. Accordingly, the Plan's Motion to Dismiss is granted.

## CONCLUSION

For the foregoing reasons, the Plan's Motion to Dismiss is granted. The National Automatic Merchandising Association Plan is dismissed from the lawsuit.

Dated: May 18, 2005

JOHN W. DARRAH
United States District Judge

5